IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEREMY GERALD   *

Plaintiff   *

v   *   Civil Action No. RDB-17-3737

DETECTIVE GREENE,[1]   *
OFFICER CHARLES ROSS, #J577,
OFFICER J586,   *
OFFICER J607,
WARDEN, BALTIMORE CITY   *
  DETENTION CENTER,
  *
Defendants
               ***

## MEMORANDUM OPINION

On December 18, 2017, pro se Plaintiff Jeremy Gerald filed a complaint pursuant to 42 U.S.C. §1983 naming "4 Unknown Baltimore Police Officers," "Baltimore City Jail," and "Detective Green" as Defendants. He presented claims arising from a traffic stop on December 30, 2014, his subsequent arrest, and his pretrial detention in Baltimore, Maryland.[2] (ECF 1). Subsequently, he named "Officer Charles Ross, #J577," and "Officer J586," and "Officer J 607," and "Warden Baltimore City Detention Center." As relief he is seeking $100,000. (ECF 1 at 5). Defendant Kathleen Landerkin, who was Warden at the Baltimore City Detention Center (BCDC), has filed a Motion to Dismiss[3] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF 19). Defendants, former Baltimore Police Department Detective Gregory Greene ("Detective

---

[1] Detective Greene's last name will be changed to reflect its spelling in the Police Officers' dispositive motion. (ECF 24).

[2] Gerald currently is housed at the Belmont Correctional Institution in St. Clairsville, Ohio on charges unrelated to this action.

[3] The Warden's Motion for an Extension of Time to Respond (ECF 18) will be granted *nunc pro tunc*.

Greene"), Police Officer Charles Ross (#J607, or "Officer Ross"), and Police Officer Gregory Edleman (#J586) (collectively, the "Officers"), pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure, filed a Motion to Dismiss, or in the Alternative for Summary Judgment with supporting police records. (ECF 24). Gerald was given an opportunity to reply to both dispositive motions (ECF 22, 25), but filed an opposition only to the Warden's Motion. (ECF 26).[4]

After considering the parties' submissions, this Court finds a hearing is unnecessary. *See* Local Rule 105.6 (D. Md. 2018). For reasons discussed below, this Court shall GRANT Warden Landerkin's Motion to Dismiss (ECF 19) and the Officers' Motion to Dismiss (ECF 24).

## BACKGROUND

### I. Traffic Stop and Arrest

On December 30, 2014,[5] Gerald was traveling in the back seat of a vehicle that was stopped by Baltimore City Police Officers Ross and Montgomery for failing to come to a complete halt at a stop sign.[6] (ECF 1 at 2; Statement of Probable Cause, ECF 24-2 at 2). The driver identified himself to the Officers as Chang Kun Kim. The Officers asked Kim and Gerald where they were going. *Id.* Kim was unable to provide a clear response, likely because he was operating an unlicensed taxi service. (ECF 24 n. 4). The Officers ordered Kim out of the car, escorted him to a patrol vehicle, and questioned him. (ECF 1 at 3). Police Officers Melillo and Edleman arrived as backup. (ECF 1 at 3; ECF 24-2 at 3).

---

[4] The Clerk shall correct the docket to show that ECF 26 is a Response in Opposition to the Warden's Motion to Dismiss, found at ECF 19.

[5] Gerald's Complaint indicates the traffic stop occurred on December 30, 2015. The date shown is likely a typographic error as demonstrated by the police records that bear his signature. (Statement of Probable Cause, ECF 24-2 at 2; Maryland Case Search, ECF 24-6 at 2).

[6] Officer Montgomery is not a defendant in this case.

2

When asked how he knew Kim, where they were going, and why he was sitting in the back seat, Gerald refused to answer. (ECF 1 at 3). Montgomery then asked Gerald for identification. (ECF 24-2 at 3). Gerald provided an incorrect date of birth. *Id.* The Officers informed Gerald that they could locate him on their database using the date of birth he had provided. Gerald offered no clarification. *Id.* In his Complaint, Gerald states that he refused to answer any more questions because he has a right to privacy, and that as a passenger he did not have to present information other than his identity. (ECF 1 at 3).

The Officers asked Gerald to exit the vehicle and he complied. (ECF 1 at 3). Ross gave him another chance to provide correct information, but Gerald refused. (ECF 24-2 at 3). At this point, Ross attempted to handcuff him, but Gerald started to run away. (ECF 24-3).[7] Gerald was taken to the ground and put in handcuffs. (ECF 24-3). Gerald alleges in the Complaint that he was improperly grabbed and slammed to the ground, causing bruising, bleeding, and scarring to his face and lip. (ECF 1 at 3). The police report does not show any injury to Gerald. (ECF 24-2).

Once handcuffed, Gerald provided his correct birthdate. Ross ran the information and found an outstanding warrant from Virginia, where Gerald was charged with breaking and entering and grand larceny. (ECF 24-2 at 3; Notice of Extradition Hearing, ECF 24-3 at 3). Gerald was arrested and charged with giving false statements to an officer, a charge which was later dropped. (ECF 1 at 3; ECF 24-2 at 4). Kim received a citation for failing to stop at a stop sign. (ECF 24-2 at 4).

On February 11, 2015, the Office of the Maryland Secretary of State accepted the Notice of Extradition Hearing issued by Virginia. (ECF 24-3). On February 23, 2015, Gerald consented to waive extradition. (ECF 24-4). Detective Greene was present at Gerald's extradition hearing.

---

[7] Gerald's Complaint made no mention of his attempt to run. ECF 1. Gerald, who did not file a Reply to the Officers' Motion to Dismiss, does not dispute the police records describing his attempt to flee. (ECF 24-2).

3

ECF 24-6 at 2. Gerald does not allege Greene was involved in the December 30, 2014 traffic stop. (ECF 1).

## II. Pretrial Detention

Following his arrest, Gerald was confined as a pre-trial detainee at the BCDC, formerly known as the Baltimore City Jail, where he is alleged to have been subjected to harsh and inhumane conditions. (ECF 1 at 4). Gerald states he was kept in his cell for 23 hours each day and permitted only one hour of out of cell activity. He was housed in this location for about one month. (ECF 1 at 4). Gerald was moved to another cell where he was permitted an opportunity for recreation once each week. (ECF 1 at 4). Gerald does not allege he suffered injury because of these conditions. (ECF 1).

Gerald was later placed in "open-bay" (no cell) housing where he alleges there were serious problems with security. He alleges two detainees attacked him with weapons, requiring treatment in the medical department. (ECF 1 at 4). Gerald does not specify the date of the attack or describe the injuries he incurred.

Gerald claims he was subjected to unlawful restrictions of his liberty due to the 23 hour per day lock-down and one hour per week of recreation and deliberate indifference to his injuries by corrections staff. He alleges generally that his rights under the Fifth and Fourteenth Amendments were violated. Further, he claims that he was not given access to the law library and his coat was not returned to him upon his release. (ECF 1 at 4-5).

## STANDARD OF REVIEW

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.)*

*Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Because Gerald is self-represented, this Court liberally construes his pleadings and holds them to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corporation v Twombly*, 550 U.S. 544, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' ...." (citation omitted)). In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must " 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440 (citations omitted); *see Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). A court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

Under certain circumstances, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). Where as here Defendants have submitted public police records in support of their Motion, a court may take judicial notice of publicly available records without converting a motion to dismiss to a motion for summary

judgment. *See, e.g., Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) ("[C]ourts are permitted to consider facts and documents subject to judicial notice without converting the motion to dismiss into one for summary judgment.").

## DISCUSSION

### I.     Warden Landerkin

Landerkin moves for dismissal of the claims against her for failure to state a claim upon which relief can be granted.

The constitutional protections afforded a pretrial detainee are provided by the Fourteenth Amendment. *See Bell v. Wolfish,* 441 U.S. 520, 535 n.16 (1979). Title 42 U.S.C. §1983 authorizes a plaintiff to sue for an alleged deprivation of a federal constitutional right by an official acting "under color of" state law. *See Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (quoting 42 U.S.C. § 1983). To establish personal liability under §1983, a plaintiff must "affirmatively show[ ] that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (internal quotation marks omitted). The official's "own individual actions" must have "violated the Constitution." *See Ashcroft v. Iqbal*, 556 U.S. 662, 676. Importantly, mere knowledge of such a deprivation does not suffice. *Wright*, 766 F.2d at 850.

A supervisor may be held liable under § 1983 if a plaintiff establishes: (1) "that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff"; (2) "that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) "that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by

6

the plaintiff." *Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir. 1994) (citations and internal quotation marks omitted). Supervisory liability "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone,* 268 F.3d 228, 235 (4th Cir. 2001), quoting *Slakan v. Porter,* 737 F.2d 368, 372 (4th Cir. 1984).

Gerald does not allege Landerkin was involved personally in or aware of his housing assignments, the alleged conditions of his confinement, his purported security concerns, his access to the prison library,[8] or the loss of his coat.[9] In his opposition, Gerald attempts to hold Landerkin culpable by alleging that it is "probable" that Landerkin knew of a risk of harm to him "by the numerous complaints sent to her by pretrial detainees" as well as "the history of litigation against the facility." (ECF 26 at 5). Gerald asserts "numerous acts of violence had occurred in the facility" before his arrest and "numerous investigations" were ongoing." (ECF No 26 at 6). Notably, he does not assert facts to suggest Landerkin had personal knowledge that he was in danger of an attack by the two detainees or any other matter specific to him. Further, Gerald does not assert Lamderkin had actual or constructive knowledge to support a claim of supervisory liability. For these reasons, Landerkin's Motion to Dismiss will be granted.

---

[8] In order to demonstrate a First Amendment denial of access to the courts claim, "actual injury" must be shown. *O'Dell v. Netherland,* 112 F.3d 773, 776 (4th Cir. 1997), quoting *Lewis v. Casey,* 518 U.S. 343, 356 (1996). Gerald does not allege missing filing deadlines or suffering other actual injury to support a First Amendment claim.

[9] Deprivations of personal property not offend due process if due process is satisfied by adequate post-deprivation state remedies. *See Parratt v. Taylor,* 451 U.S. 527, 543 (1981), overruled on other grounds by *Daniels v. Williams,* 474 U.S. 327 (1986). Section 1983 vindicates federal rights, not tort claims for which there are adequate state law remedies. *See Wright v. Collins,* 766 F.2d 841, 849 (4th Cir.1985) (citing *Tucker v. Duncan,* 499 F.2d 963, 965 n. 1 (4th Cir.1974)). The right to seek damages and injunctive relief in Maryland courts constitutes an adequate post deprivation remedy. For these reasons, Gerald's loss of property claim does not amount to a constitutional claim and shall be dismissed.

## II. Police Officers

To state a claim under § 1983, a plaintiff must allege that: 1) a right secured by the Constitution or laws of the United States was violated and 2) the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). In the Complaint, Gerald claims "violations to the Fourth, Fifth, Eighth and Fourteenth Amendments of *the U.S. Constitution*" based on his alleged false arrest, malicious prosecution (as to the charges were pursued by Detective Greene), excessive force by the four police officers, and unlawful traffic stop. (ECF 1 at 3). Each claim is examined below.

### A. Constitutional Claims

#### 1. Fourth and Fourteenth Amendments

##### a. Excessive Force

The law surrounding excessive use of force during arrest is well defined. Claims for the use of excessive force in effectuating an arrest or other seizure are governed by the Fourth Amendment's prohibition against unreasonable seizures; claims of excessive force against a convicted prisoner are governed by the Eighth Amendment's prohibition of cruel and unusual punishment; and claims of post-arrest excessive force against an arrestee or pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, which prohibits before conviction the use of excessive force that amounts to punishment. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). The right to stop or arrest necessarily involves the right to use some degree of physical force so "[t]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 396–97. "Not every push or shove, even if it may later seem unnecessary in

the peace of a judge's chambers" will rise to a Fourth Amendment violation. *Id..* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

A court analyzes several factors to determine objective reasonableness, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* "The extent of the plaintiff's injury is also a relevant consideration." *Bailey v. Kennedy*, 349 F.3d 731, 743 (4th Cir. 2003) (quoting *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003)). "To properly consider the reasonableness of the force employed we must 'view it in full context, with an eye toward the proportionality of the force in light of all the circumstances.'" *Estate of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 899 (4th Cir. 2016) (quoting *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2005)).

When Gerald began to evade arrest, the Officers acted quickly to detain him. Gerald had already provided false identifying information and it was unclear who he was and if he posed a danger to public safety. Assuming as true Gerald's allegation that he was slammed to the ground and sustained bruises and bleeding on his lip and face, the claimed injuries were minor and consistent with a take-down. Importantly, Gerald does not allege the force continued once he was taken to the ground and was handcuffed. The Officers' use of force was proportionate to the circumstance. Looking at the totality of the circumstances, the Officers' actions were not objectively unreasonable and do not serve as the basis for a 4th Amendment excessive force claim. Therefore, this claim will be dismissed.

Gerald also alleges the Officers used excessive force in violation of the Fourteenth Amendment Due Process Clause. Gerald alleges no facts relating to excessive force outside his

9

arrest, and his Fourteenth Amendment claim will be dismissed for failure to state a claim upon which relief may be granted.

### b. False Arrest and Malicious Prosecution

The United States Court of Appeals for the Fourth Circuit instructs that "[a] claim for false arrest alleges that a warrantless arrest lacked probable cause," whereas "a claim for malicious prosecution alleges that an arrest made pursuant to a warrant lacked probable cause." *Smith v. Munday*, 848 F.3d 248, 257 (4th Cir. 2017). Thus, a plaintiff must allege facts demonstrating that he was arrested without probable cause to state a claim for false arrest or malicious prosecution under § 1983. To establish a Fourth Amendment for false arrest or malicious prosecution, a plaintiff must show (1) that the defendant seized plaintiff pursuant to legal process without probable cause and (2) that the criminal proceedings have terminated in plaintiff's favor. *Smith*, 848 F.3d at 253, 257 (citations omitted).

### i. False Arrest

This Court must examine whether the Officers had probable cause to arrest Gerald. Kim, the driver, was pulled over because he failed to halt at a stop sign, a violation of Md. Transp. Code §21-707(a). (ECF 24-2 at 4). Gerald alleges no facts to suggest the initial traffic stop was unlawful. The temporary seizure of driver and passengers ordinarily continues and remains reasonable for the duration of the stop. *See Arizona v. Johnson*, 555 U.S. 323, 333 (2009).

The Officers' questions about where the car was heading, how Gerald and Kim knew one another and request for identification did not convert the stop into something other than a lawful seizure, so long as the inquires do not measurably extend the duration of the stop, something which is not alleged here. *Muehler v. Mena*, 544 U.S. 93, 100-101 (2005); *United States v. Ferndandez*, 600 F.3d 56, 62 (1st Cir. 2010). Since a passenger may present a risk to officer safety, an officer

may ask passengers for identification. *Maryland v. Wilson*, 519 U.S. 408, 413-414 (1997). Gerald's lawful detention and questioning at the traffic stop led to discovery of a warrant for his arrest. Such circumstances do not support a Fourth Amendment claim for false arrest.

### ii. Malicious Prosecution

A malicious prosecution claim under § 1983 is a claim "founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution." *Smith*, 848 F.3d at 252-53, quoting *Lambert*, 223 F.3d at 262. Apart from the Complaint's summary assertion there was "malicious prosecution" (as to the charges that were pursued by Detective Green), Gerald provides no facts to substantiate his claim. (ECF 1 at 3). Greene was the complainant in Gerald's fugitive from justice proceeding in the District Court for Baltimore City, Case 4B02281402. ECF 24-6 at 2. Greene's actions were prompted by an outstanding warrant for Gerald's arrest, and Gerald subsequently waived extradition to Virginia on the warrant. Accordingly, there is no basis for a Fourth Amendment malicious prosecution claim.

### 2. Eighth Amendment

Gerald next claims the Officers violated his rights under the Eighth Amendment. For reasons discussed above, his excessive force claims are not cognizable under the Eighth Amendment's prohibition against cruel and unusual punishment because that protection applies only at the post-conviction stage. *See supra*, p. 8.[10]

### 3. Fifth Amendment

Plaintiff was not compelled to testify against his own interests, nor was he subjected to double jeopardy or deprived of his due process rights. Gerald, who was a fugitive from justice,

---

[10] Gerald does not raise a Fifth Amendment excessive bail claim nor is it likely that such a claim would have merit since he was a fugitive from justice who had provided authorities with false identification and attempted to flee. After a hearing in the District Court of Maryland for Baltimore City, Gerald was ordered to be held without bail. (ECF 24-7).

11

voluntarily waived his extradition and submitted himself to the custody of the Commonwealth of Virginia to answer for his actions in that jurisdiction. Gerald fails to state a claim against any of the Defendants under the Fifth Amendment. As such, this claim will be dismissed.

### B. State Claims

Lastly, the Officers argue for dismissal of Gerald's state law tort claims of false imprisonment and malicious prosecution. They argue that Gerald failed to provide prerequisite notice of his claims under Maryland's Local Government Tort Claims Act. *See* Md. Code Ann., Cts. & Jud. Pro. §5-301. Moreover, Gerald does not assert he complied with the notice requirements. Accordingly, his state tort claims will be dismissed. To the extent Gerald may intend to raise other claims arising under state law, this Court declines to exercise supplemental jurisdiction over them. *See* 28 U.S.C. § 1367(c)(3) (authorizing a district court to decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction").

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, this Court will by separate Order grant Warden Landerkin's Motion to Dismiss (ECF 19) and the Officers' Motion to Dismiss (ECF 24) and close this case.

Dated: February 1, 2019

　　　　　　　　　　　　　　　　　　　　　／s／ Richard D. Bennett
　　　　　　　　　　　　　　　　　　　　　RICHARD D. BENNETT
　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE